UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JUNE LENK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 1296 DDN |
| | ) | |
| ST. LOUIS PUBLIC SCHOOLS and | ) | |
| SHC SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the second motion of defendant St. Louis Public Schools ("SLPS") for judgment on the pleadings. (Doc. 35). Plaintiff June Lenk opposes the motion. (Doc. 45). The Court heard oral arguments from the parties on March 26, 2019.

## BACKGROUND

### Plaintiff's amended complaint

Plaintiff alleges the following facts in her amended complaint. Plaintiff is legally blind. (Doc. 32, ¶ 9). She has a Masters of Education in Visual Impairment and a Masters of Education in Learning Disabled. (*Id*. at ¶ 11). She has over ten years of experience teaching "in various capacities throughout Missouri." (*Id.*). She began working at defendant SLPS in August 2015 as an Itinerant Vision Teacher of SLPS students. (*Id.* at 13). While based at Gateway Michael Elementary School, she taught at nine elementary, middle, and high schools, traveling throughout the school district to teach students with vision impairments. (*Id.* at 14, 16). At Gateway Michael Elementary School, she had a locked office to store teaching supplies, student files, and magnification devices; SLPS provided her with a key to this office. (*Id.* at ¶ 16). Plaintiff also used the office to perform critical work functions like updating student

Individualized Educational Program ("IEP") information on the SLPS digital database. (*Id.*). Plaintiff was required to submit weekly timesheets and mileage sheets to SLPS staff for approval. (*Id.* at ¶ 17). SLPS gave plaintiff an SLPS email address (junelenk@slps.org). Plaintiff used this email account for all of her work-related business, including emails to SLPS staff and Supplemental Health Care ("SHC") employees. (*Id.* at ¶ 18).

Defendant SLPS was aware of plaintiff's disability, and it assigned Carrie McDaniel (SLPS's employee and Special Education Administrator) to assist plaintiff with any matters related to her disability. (*Id.* at ¶¶ 19-20). Before the beginning of the relevant school year, plaintiff notified Ms. McDaniel that she required assistive software on her work computer to complete her duties, including a Speech Package and magnification software that would enable her to listen to or read documents and see images. (*Id.* at ¶ 21). Ms. McDaniel coordinated with SLPS IT staff. Defendant's staff member traveled to Gateway Michael school to review plaintiff's computer and software, and to check their compatibility and functionality with the SLPS networks and necessary database. (*Id.* at ¶ 22). However, this "accommodation" effort "was not satisfactory because plaintiff was not often able to access" the required SLPS database in order to update student IEPs, a critical function of her employment. (*Id.* at ¶¶ 22-23).

Plaintiff alerted SLPS and Supplemental HealthCare ("SHC") about the technical difficulties, and despite multiple calls by SLPS staff to SLPS IT in the fall and winter of 2015, SLPS was unable to provide a solution. (*Id.* at ¶¶ 24-25).

On January 20, 2016, plaintiff received a call from SHC employee Natalie Allenbeck informing plaintiff that SLPS had complained about her, though Ms. Allenbeck did not provide any details about the complaint. (*Id.* at ¶¶ 26, 29). Plaintiff was shocked, as she had interacted positively with fellow SLPS and SHC staff, with the only issue being her ability to access the SLPS database and timely update IEP plans. (*Id.* at ¶ 27). Plaintiff had made several complaints herself to SHC and SLPS about her difficulties accessing the database. (*Id.* at ¶ 28). Ms. Allenbeck of SHC told plaintiff to "keep her head down" and avoid any other problems. (*Id.* at ¶ 29).

In February 2016, SHC provided plaintiff a new laptop. However, problems remained with her accessing the database. Further efforts in March 2016 by SLPS IT personnel and a third party allowed her to better access the needed database. (*Id.* at ¶ 30).

On June 8, 2016, plaintiff was notified that SLPS would not renew her contract for the 2016-2017 school year. (*Id.* at ¶ 31). Plaintiff was surprised, as she believed she was very well received by all the principals and SLPS staff with whom she had worked and she had been discussing plans with them for the next school year. (*Id.* at ¶ 32). Ms. McCormack told plaintiff she believed that, if there had not been the computer problems plaintiff had in accessing the SLPS database, plaintiff would have continued working at SLPS. (*Id.* at ¶ 33). Plaintiff was notified around August 2016 that her position was given to another teacher who did not require any speech or magnification software and who did not have the same qualifications and experience as plaintiff. (*Id.* at ¶¶ 34-35).

Plaintiff's amended complaint brings three claims against defendant SLPS: Count 1 for unlawful discharge in violation of the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.* ("ADA"); Count 2 for failure to accommodate in violation of the ADA; and Count 3 for violation of Section 504 of the Rehabilitation Act 29 U.S.C. § 701, *et seq.* (Doc. 32 at 6-8).

**Defendant SLPS's answer to amended complaint**

In its answer to plaintiff's amended complaint, defendant SLPS asserts the following. It generally denies plaintiff's claims and specifically denies plaintiff was an employee of SLPS. (Doc. 33 at ¶¶ 2, 5, Ex. A). During the 2015-2016 school year, plaintiff was an employee of SLPS vendor Supplement Health Care Services, Inc. ("SHC") as a contracted Itinerant Vision Teacher assigned to teach SLPS students at SLPS schools. (*Id.* at ¶¶ 13-15). Plaintiff in this lawsuit has previously admitted being an employee of SHC. (*Id.* at ¶ 5). Ms. Carrie McDonald is a SLPS administrative employee. (*Id.* at ¶ 20). During the 2015-2016 school year, SHC purchased, provided, and uploaded additional software on the computer that SHC purchased for plaintiff. (*Id.* at ¶ 21). At SHC's request, SLPS assisted SHC regarding the installation of software

onto plaintiff's laptop computer to ensure compatibility between the technology provided by SHC and SLPS's network. (*Id.* at ¶ 22). SLPS admits it assisted plaintiff in resolving issues she had with SLPS's system. (*Id.* at ¶ 24).

Attached to defendant's answer is the Consultant Service Agreement between SLPS and Supplemental Healthcare. (Doc. 33-1).

## **SLPS' second motion for judgment on the pleadings**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. Pro. 12(c). Defendant SLPS filed its answer on August 15, 2018. (Doc. 12). Accordingly, the pleadings on which defendants moved for judgment were closed at the time of its motion, and the timing of this motion is permissible.

"Judgment on the pleadings is appropriate when there is no material issue of fact and the moving party is entitled to judgment as a matter of law." *Country Preferred Ins. Co. v. Lee*, 918 F.3d 587, 588 (8th Cir. 2019); *see also Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). When deciding a motion for judgment on the pleadings, the court applies the same standard used for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Edwards v. McSwain*, 2018 WL 4679735, at *3 (E. D. Mo. Sept. 28, 2018). In this regard, the complaint "must include enough facts to state a claim to relief that is plausible on its face," providing more than just labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Proper pleadings will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555. In reviewing the pleadings under this standard, the court accepts all of the plaintiff's factual allegations as true and draws all inferences in the plaintiff's favor, but the court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012).

## DISCUSSION

Plaintiff seeks relief in Count 1 for unlawful discharge from employment in violation of the ADA, in Count 2 for failure to accommodate in violation of the ADA, and in Count 3 for violation of Section 504 of the Rehabilitation Act. On its motion for judgment, defendant argues it was never plaintiff's employer at any relevant time, so Counts 1-3 fail to state a claim for relief against it. On Count 2 it argues that plaintiff was provided the accommodations she requested and on Counts 1 and 3 because plaintiff was not terminated but continued to be employed by SHC.

### Plaintiff's employment status with SLPS

An ADA claim must be brought against a plaintiff's employer, because the ADA protects "employees." 42 U.S.C. § 12112(a); *Lerohl v. Friends of Minnesota Sinfonia,* 322 F.3d 486, 489 (8th Cir. 2003). In this case, the initial issue is not whether plaintiff was an employee, but rather who plaintiff's employer was. In this determination the Court finds some characteristics of the employment relationship in the following Supreme Court discussion:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52 (1989).

Plaintiff argues that the amended complaint specifically alleges that SLPS was her employer (¶¶ 2, 5, 13) and also provides sufficient facts to give the Court a reasonable basis to infer that an employer-employee relationship existed between her and SLPS. In

her amended complaint, plaintiff alleges that SLPS assigned her an office to store teaching supplies, student files, and magnification devices; SLPS required her to submit weekly timesheets and mileage sheets to be signed off by SLPS staff for approval; SLPS required her to use an SLPS email address (junelenk@slps.org); SLPS staff and students referred to her as a "teacher"; she was assigned an SLPS administrator and employee to assist with any of her disability matters; SLPS required her to use SLPS databases and software, and she notified SLPS of her accommodation requests and complaints; and SLPS made the sole decision not to renew her contract in June 2016. (Doc. 32 at ¶¶ 13, 14, 16-18, 20-25, 27-28, 30, 33). Further, plaintiff was required to submit weekly timesheets to it; SLPS controlled whether students would meet with plaintiff, where they would meet, and the meeting time; SLPS, plaintiff mainly used materials provided by SLPS in the performance of her job; SLPS provided plaintiff a personal office and key, an email address (junelenk@slps.org), an administrator to assist plaintiff with any matters relating to her disability, and IT support. (Doc. 32 at ¶¶ 16, 18, 20).

Defendant argues, on the other hand, that plaintiff was employed by SHC, and it was SHC who had a contract to provide plaintiff's services to SLPS. Defendant adverts to motion practice before the amended complaint was filed in support of this argument. With regard to the original complaint, when SHC was named as a defendant, SHC admitted to being plaintiff's employer. (Doc 9, Ex. 1; Doc. 33, Ex. 4). Plaintiff also admitted that SHC was her employer in her Response to SHC's Motion to Dismiss. (Doc. 14, ¶ 1; Doc. 33, Ex. 2). She alleges that she complained to SHC about her difficulties accessing the SLPS database and that SHC provided plaintiff with a new laptop. (Doc. 32). Defendant SLPS's answer includes an affidavit from the Director of Special Education explaining that SHC was an independent contractor and employed plaintiff to perform temporary work assignments in fulfillment of its contract with SLPS, as well as the contract between SHC and SLPS. (Doc. 33, Ex. 1).

Defendant SLPS's argument that it was not plaintiff's employer is unavailing. The characterization of a relationship in a contract is not dispositive in this analysis. *Schwieger v. Farm Bureau Ins. Co. of NE*, 207 F.3d 480, 483 (8th Cir. 2000) ("The

existence of a contract referring to a party as an independent contractor does not end the inquiry, because an employer may not avoid Title VII by affixing a label to a person that does not capture the substance of the employment relationship.") (citations omitted). Plaintiff's amended complaint does not include information about her relationship with SHC. The existence of a relationship between plaintiff and SHC, however, does not mean there was not an employment relationship between plaintiff and SLPS.

Plaintiff argues that SLPS was her joint employer with SHC. Defendant argues that plaintiff may not make this argument, because she did not allege joint employment in her amended complaint. While true, this does not prevent plaintiff from arguing this legal conclusion from the facts alleged in the amended complaint. In assessing the legal sufficiency of a complaint, the Court must look primarily to the factual allegations, not merely the legal conclusions or labels included in the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The tri-partite relationship of plaintiff and SHC and SLPS has been indicated in the case since the filing of the original complaint. (Doc. 6, ¶¶ 6, 7). SLPS is not disadvantaged because plaintiff argues this conclusion from the facts alleged in the amended complaint.

A joint employer may be held responsible under the Americans with Disabilities Act and the Rehabilitation Act. *Ruiz v. Mukasey*, 594 F.Supp.2d 738, 741 ((S. D. Tex. 2008). The "joint employer" relationship involves separate legal entities which have chosen to handle jointly important aspects of their employment relationship with an individual. *See Scheidecker v. Arvig Enter., Inc.,* 122 F.Supp.2d 1031, 1038 (D. Minn. 2000). "A finding of joint employer is proper where one company has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* One potential characteristic of joint employment could be whether the defendant made the final decision to terminate the plaintiff. *Ruiz v. Mukasey*, 594 F.Supp.2d at 741. The facts alleged by plaintiff include the allegation that SLPS, not SHC, terminated her employment at SLPS, by deciding not to renew her contract for the following school term.

7

The nature of plaintiff's employment cannot be decided on this motion for judgment on the pleadings, given the fact-intensive nature of the inquiry, but plaintiff has alleged sufficient facts to survive a motion for judgment on this basis at this stage of the litigation.

## **SLPS accommodation**

In Count 2 plaintiff claims defendant SLPS failed to accommodate her, in violation of the ADA. Under the ADA, to state a claim for failure to accommodate, plaintiff must allege that "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014).

SLPS argues that plaintiff's accommodation requests were satisfied by March 2016, when SHC provided plaintiff with a new laptop and SLPS and a "third party" allowed her to successfully access the required SLPS database. Plaintiff counters that she alleges the initial accommodation was not satisfactory and led to her termination, regardless of the later accommodation. In reviewing the pleadings, the Court is persuaded that plaintiff's allegations of fact remove the underpinnings of her Count 2 claim that SLPS failed to accommodate her disability. The issue before the Court is not whether SLPS was immediately successful in its efforts to remediate plaintiff's inability to digitally access the necessary database to fully do her job, as plaintiff seems to argue. Rather, the issue is whether SLPS engaged in a good faith effort to accommodate plaintiff. *Minnihan v. Mediacom Comm's Corp.*, 779 F.3d 803, 813-14 (8th Cir. 2014). Drawing all reasonable inferences in plaintiff's favor from plaintiff's allegations of fact, the conclusion is inescapable that SLPS engaged in a good faith effort to accommodate plaintiff.

SLPS knew of plaintiff's vision disability and assigned Ms. McDaniel, an employee and official, to assist her with matters relating to her disability. When plaintiff needed computer software as an accommodation, consistent with her responsibility to initiate an interactive process with SLPS to satisfy this need, *see Prod. Fabricators*, 763 F.3d at 971, she notified Ms. McDaniel that she needed specific software. Ms. McDaniel and SLPS IT personnel endeavored to fix plaintiff's problem. Plaintiff alleges that for an "unreasonably delay" of six months they were unable to remedy plaintiff's computer software problem to allow her to access the required SLPS database in order to update student IEPs, a critical function of her employment. In February 2016, SHC provided plaintiff a new laptop, but problems remained with her accessing the database. Finally, by March 2016 SLPS IT personnel and a third party allowed her to better access the needed database.

Drawing all inferences favorable to plaintiff from the allegations in her amended complaint, defendant SLPS is entitled to judgment as a matter of law on plaintiff's Count 2 claim for failure to accommodate.

**Plaintiff's termination**

Finally, defendant SLPS claims that plaintiff was not "terminated" and so her Counts 1 and 3 for wrongful termination fail to state a claim. Defendant points to plaintiff's MCHR charge of "non-renewal," indicating that defendant did not renew her contract. Defendant argues this is inconsistent with plaintiff's current claim that defendant "terminated" plaintiff's employment.

Plaintiff responds that this is purely semantic, and that whether defendant did not renew the contract or terminated plaintiff, the action was an "adverse" one. To establish a prima facie wrongful-termination claim under the ADA, a plaintiff must show she "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action because of her disability." *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). The standard for a claim under the Rehabilitation Act is similar, requiring a showing that (1) the plaintiff was disabled,

(2) she was qualified to do the essential job function with or without reasonable accommodation, and (3) she suffered an adverse action due to her disability. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016). An adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage." *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008).

Defendant claims that SHC continued to employ plaintiff after the SLPS contract expired, so plaintiff was not "terminated."

The Court is persuaded that whether it was traditional termination or constructive termination, the failure to renew plaintiff's contract is sufficient to allege a tangible change in plaintiff's working conditions that produced a material employment disadvantage. Plaintiff's characterization of this as a termination does not require the dismissal of the complaint.

## ORDER

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendant SLPS for judgment on the pleadings (Doc. 35) is sustained as to plaintiff's Count 2 claim under the ADA for failure to accommodate. In all other respects, the motion is denied.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 23, 2019.